UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X
                                                            :
JEREMIAH CUMMINGS,                                          :
                                        Plaintiff,          :
                                                            :      14 Civ. 36 (LGS)
                -against-                                   :
                                                            :      **OPINION AND ORDER**
                                                            :
SOUL TRAIN HOLDINGS LLC, *et al.*,                          :
                                        Defendants.         :
                                                            :
------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 12/12/2014

LORNA G. SCHOFIELD, District Judge:

This action arises out of Defendants' alleged misuse of recordings of Plaintiff Jeremiah Cummings' performances on the television program "The Soul Train." The Second Amended Complaint ("SAC") alleges violations of (1) Plaintiff's right of publicity under New York and Illinois law, (2) Plaintiff's right of privacy under New York law, (3) the Lanham Act, (4) the Illinois Consumer Fraud and Deceptive Trade Practices Act and (5) Illinois common law prohibiting trademark infringement and unfair competition. For the following reasons, Defendants' motion to dismiss the SAC is granted.

**BACKGROUND**

The facts below are taken from the SAC and documents incorporated by reference in or integral to the SAC. These facts are assumed to be true for purposes of this motion.

Plaintiff Jeremiah Cummings is a musician who was a member of the rhythm and blues music group, Harold Melvin and the Blue Notes (the "Blue Notes") from 1973 to 1980. He is an Illinois domiciliary. Defendants Soul Train Holdings, LLC ("Soul Train Holdings"); InterMedia Advisors, LLC; InterMedia Partners, LP and InterMedia Partners VII, LLP (these three together, the "Intermedia Defendants") are limited liability companies incorporated in Delaware and

having a place of business in New York.  Defendant Direct Holdings Americas, Inc. ("Direct Holdings") is a Delaware corporation that maintains a place of business in Virginia.

On several occasions from 1974 through 1976, the Blue Notes performed during nationally televised episodes of "The Soul Train."  During one appearance, the Blue Notes were interviewed by the show's host, and the group's members, including Cummings, were asked to introduce themselves by name during the interview.  The SAC alleges that Cummings did not receive any financial compensation for his appearances and that he "was not asked to sign, and did not sign, any release or grant of rights for future use, in conjunction with . . . the performance video footage of the Soul Train Shows."

Footage from the Blue Notes' performances on The Soul Train has been used in (1) DVD compilations entitled "Best of Soul Train" (the "DVD sets") and (2) televised advertisements and Internet videos marketing these DVDs.  The trademarks "Soul Train" -- registered to Soul Train Holdings -- and "Time Life" -- used under license by Direct Holdings -- are prominently displayed on the DVD sets' packaging and contents.

Soul Train Holdings and the InterMedia Defendants owned "certain rights of use in the stock video footage of the Soul Train Shows" which they transferred to Direct Holdings.  Direct Holdings and Soul Train Holdings market the DVD sets through televised infomercials, a website and a YouTube channel.  The SAC alleges that Soul Train Holdings and the InterMedia Defendants "offer and benefit from the license to the public of stock video footage of the Soul Trains Shows through its subsidiary," non-party Global ImageWorks, LLC.

The SAC alleges that Defendants violated Cummings' rights of publicity and privacy by using "his image, likeness, picture and/or voice" in the DVD sets and related promotional materials without his consent.  The SAC further alleges that, in violation of the Lanham Act and

Illinois law, "Defendants' unauthorized inclusion of Plaintiff in [advertisements and Internet videos] presented a false or misleading representation of Plaintiff's participation in them that caused confusion and mistake" among the public, "by creating the false impression that Plaintiff approved, sponsored or was otherwise associated with this advertising and with the Soul Train DVD Sets."

## **STANDARD**

On a motion to dismiss, the Court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in favor of the non-moving party. *Hooks v. Forman, Holt, Eliades & Ravin, LLC*, 717 F.3d 282, 284 (2d Cir. 2013). To withstand dismissal, a pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Rule 8 of the Federal Rules of Civil Procedure "requires factual allegations that are sufficient to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 182 (2d Cir. 2012) (alteration in original) (quoting *Twombly*, 550 U.S. at 555).

On a motion to dismiss, the court may consider the complaint, "[d]ocuments that are attached to the complaint or incorporated in it by reference," "document[s] upon which the complaint solely relies and which is integral to the complaint," and "matters of which judicial notice may be taken." *Garanti Finansal Kiralama A.S. v. Aqua Marine & Trading Inc.*, 697 F.3d 59, 63 n.4 (2d Cir. 2012) (citations and internal quotation marks omitted); *accord Comedy III Prods., Inc. v. New Line Cinema*, 200 F.3d 593, 594-96 (9th Cir. 2000) (considering film footage

at motion to dismiss stage); *Louis Vuitton Malletier S.A. v. Warner Bros. Entm't Inc.*, 868 F. Supp. 2d 172, 176 n.6 (S.D.N.Y. 2012) ("As the Film is referred to in the complaint and is integral to [plaintiff's] claims, it is deemed incorporated into the complaint by reference.") (citing *Blue Tree Hotels Inv. (Can.), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 217 (2d Cir. 2004)).

A federal court sitting in diversity applies the choice of law rules of the forum state. *See In re Coudert Bros. LLP*, 673 F.3d 180, 186 (2d Cir. 2012) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). Thus, New York choice-of-law principles apply here.

## DISCUSSION

The SAC does not allege that Plaintiff owns the copyrights to the footage of the Soul Train television programs contained in the DVD sets. Plaintiff therefore does not -- and presumably cannot -- challenge Defendants' rights in the footage. Instead, the SAC raises right of publicity and right of privacy claims under state law and a claim under the Lanham Act. For the following reasons, each of these claims fails.

**I.     Right of Publicity Claims**

    **A.     Claim Under New York Law**

Plaintiff's right of publicity claim under New York law fails on choice-of-law grounds. As Plaintiff may allege right of publicity claims only under Illinois law, Plaintiff's claim under New York law must be dismissed.

The New York Court of Appeals has made clear that New York courts must apply the law of the Plaintiff's domicile to right of publicity claims. *See S.E. Bank, N.A. v. Lawrence*, 66 N.Y.2d 910, 912 (1985) (holding that "questions concerning personal property rights are to be

determined by reference to the substantive law of the [claimant]'s domicile" and "rights of publicity constitute personality"); *accord Rogers v. Grimaldi*, 875 F.2d 994, 1002 (2d Cir. 1989).

Plaintiff here is an Illinois domiciliary and "concedes that Illinois law . . . may be properly applied to his claim." Accordingly, Plaintiff's right of publicity claim under New York State law is dismissed.

### B. Claim Under Illinois Law

Plaintiff's right of publicity claim under Illinois law is also dismissed. The DVD sets and promotional materials in question here are clearly exempt from Illinois' right of publicity statute.

The Illinois Right of Publicity Act ("IRPA") explicitly supplants the rights and remedies that were available at common law. 765 Ill. Comp. Stat. 1075/60 ("The rights and remedies provided for in this Act are meant to supplant those available under the common law . . . ."). IRPA recognizes that every individual has a "right to control and to choose whether and how to use [his] identity for commercial purposes." *Id.* at 1075/10. IRPA does not apply to, inter alia, the "use of an individual's identity in an attempt to portray . . . [an individual] in a live performance, . . . musical work, film, radio, television, or other audio, visual, or audio-visual work," as long as the performance "does not constitute in and of itself a commercial advertisement for a product, merchandise, goods, or services." *Id.* at 1075/35(b)(1). Furthermore, "promotional materials, advertisements, or commercial announcements" for such use are also exempt from IPRA. *Id.* at 1075/35(b)(4).

The recordings at issue are clearly within this statutory exemption, and Plaintiff does not offer any argument to the contrary. The recordings "portray" a "live performance" or "musical work" performed by Cummings as a member of the Blue Notes, and the Soul Train footage does not itself constitute commercial advertisement. These recordings therefore fall outside IRPA's

5

ambit. The infomercials, YouTube videos and websites described in the SAC are likewise exempt, as "promotional materials" and "advertisements" marketing these recordings.

Accordingly, Plaintiff's right of publicity claim under Illinois law is dismissed.

### C. Federal Copyright Law Preemption

As discussed above, Plaintiff's right of publicity claim under New York law must be dismissed on choice-of-law grounds, and Plaintiff's Illinois claim must be dismissed based on IPRA's statutory language. However, independently and alternatively, both right of publicity claims must be dismissed as preempted by federal copyright law. The Second Circuit has stated:

> [O]nce a performance is reduced to tangible form, there is no distinction between the performance and the recording of the performance for the purposes of preemption under § 301(a). Thus, if a baseball game were not broadcast or were telecast without being recorded, the Players' performances similarly would not be fixed in tangible form and their rights of publicity would not be subject to preemption. By virtue of being videotaped, however, the Players' performances are fixed in tangible form, and any rights of publicity in their performances that are equivalent to the rights contained in the copyright of the telecast are preempted.

*Nat'l Basketball Ass'n v. Motorola, Inc.*, 105 F.3d 841, 849 (2d Cir. 1997) (quoting *Balt. Orioles, Inc. v. Major League Baseball Players Ass'n*, 805 F.2d 663, 675 (7th Cir. 1986)).

Plaintiff's performances here likewise have been "fixed in tangible form," and his "rights of publicity" are therefore preempted.

## II. Right of Privacy Claim

Plaintiff's right of privacy claim under section 50 of New York Civil Rights Law also fails, as the SAC does not allege that Defendants used Plaintiff's likeness for advertising or for purposes of trade, as required by section 50.

Section 50 prohibits the "use[] for advertising purposes, or for the purposes of trade, the name, portrait or picture of any living person without having first obtained the written consent of

such person."[1]  N.Y. Civ. Rights Law § 50.  The New York Court of Appeals has "underscored that the statute is to be narrowly construed."  *Messenger ex rel. Messenger v. Gruner + Jahr Printing & Publ'g*, 94 N.Y.2d 436, 441 (2000).

"Although the statute does not define 'purposes of trade' or 'advertising,' courts have consistently refused to construe these terms as encompassing publications concerning newsworthy events or matters of public interest."  *Finger v. Omni Publ'ns Int'l, Ltd.*, 77 N.Y.2d 138, 141-42 (1990).  The Court of Appeals has held that the concepts of "newsworthiness" and "matters of public interest" are to be broadly construed.  *Gruner*, 94 N.Y.2d at 441-42.  "Newsworthiness includes not only descriptions of actual events, but also articles concerning political happenings, social trends or any subject of public interest."  *Id.* (citations omitted).  Additionally, "a wide variety of articles on matters of public interest -- including those not readily recognized as 'hard news' -- are newsworthy."  *Id.* at 442 (citations omitted); *accord Gaeta v. Home Box Office*, 169 Misc. 2d 500, 502 (N.Y. Civ. Ct. 1996) ("The newsworthiness or public interest exception has been held to apply not only to 'hard news' such as reports of political happenings, but also to social trends and matters of interest to consumers.").

*Gautier v. Pro-Football, Inc.*, 304 N.Y. 354 (1952), is particularly instructive here.  In *Gautier*, an animal trainer who performed during the halftime show of a professional football game sued for violation of his right of privacy.  *Id.* at 356.  The plaintiff had signed a contract

---

[1] Section 50 is a criminal statute that makes such conduct a misdemeanor.  The SAC does not cite N.Y. Civil Rights Law § 51, but section 51 establishes the civil cause of action for violations of privacy.  Although the SAC incorrectly cites section 50 instead of section 51, Plaintiff's omission is immaterial, as the two sections are generally analyzed together in civil actions.  *See, e.g.*, *Lan Sang v. Ming Hai*, 951 F. Supp. 2d 504, 525 (S.D.N.Y. 2013); *Am. Freedom Def. Initiative v. Metro. Transp. Auth.*, 880 F. Supp. 2d 456, 470 n.7 (S.D.N.Y. 2012); *Naked Cowboy v. CBS*, 844 F. Supp. 2d 510, 518 (S.D.N.Y. 2012).

agreeing to perform before the live stadium audience of 35,000, but he objected to his performance being televised.  *Id.* at 357.  His performance was nonetheless televised.  *Id.*

The Court of Appeals dismissed the plaintiff's right of privacy claim, citing the "newsworthiness" and "public interest" exception.  *Id.* at 359-61.  The *Gautier* Court held:

> Where, however, one is a public personage, an actual participant in a public event, or where some newsworthy incident affecting him is taking place, the right of privacy is not absolute, but limited.  Here plaintiff . . . consented to perform before 35,000 spectators in a professional football game that had wide and legitimate public interest.  While not a part of the game proper, he did become a part of the spectacle as a whole by appearing between the halves, and voluntarily occupying the very center of attraction for several minutes.  Under these circumstances, it can hardly be said that his right of privacy was invaded.

*Id.* at 360; *accord id.*, at 361 ("[T]here was no invasion of any 'right of privacy' . . . .  His real complaint, and perhaps a justified one, but one we cannot redress in this suit brought under the New York 'Right of Privacy' statutes, is that he was not paid for the telecasting of his show.") (Desmond, J., concurring); *Man v. Warner Bros. Inc.*, 317 F. Supp. 50, 53 (S.D.N.Y. 1970) ("Section 51 was never intended to apply to professional entertainers who are shown giving a performance before a public audience.").  Forty-eight years after it was decided, the Second Circuit stated, "*Gautier* remains good law."  *Messenger ex rel. Messenger v. Gruner + Jahr Printing & Pub.*, 94 N.Y.2d 436, 447 n.4 (2000).

The same logic applies here.  Although Plaintiff avers that he "was not asked to sign, and did not sign, any release or grant of rights for future use, in conjunction with . . . the performance video footage of the Soul Train Shows," he consented to perform live on national television.  Just as in *Gautier*, "it can hardly be said that his right of privacy was invaded."  Also, as in *Gautier*, Plaintiff's real complaint is that he was not paid for the production and sale of the DVD in which he appears; however, that grievance cannot be redressed with the right of privacy statute.

The promotional materials used to advertise the Soul Train DVD sets are shielded from right of privacy liability by the "incidental use" doctrine.  New York courts have held that advertisements for publications protected by the "newsworthiness" exemption do not contravene New York's right of privacy statutes.  *See Booth v. Curtis Publ'g Co.*, 15 A.D.2d 343, 350 (N.Y. App. Div. 1962) *aff'd*, 11 N.Y.2d 907 (1962) (finding no right of privacy liability where magazine reprinted in advertisement a photograph originally taken for news piece, "as the reproduction was used to illustrate the quality and content of the periodical in which it originally appeared"); *Namath v. Sports Illustrated*, 80 Misc. 2d 531, 535 (N.Y. Sup. Ct. 1975) *aff'd*, 48 A.D.2d 487 (N.Y. App. Div. 1975) *aff'd*, 39 N.Y.2d 897 (1976) (no liability where newsworthy photographs of professional football player were reprinted in advertising for magazine subscriptions).  The advertisements, YouTube videos, and websites described in the SAC fall into this category and therefore cannot give rise to right of privacy liability.

Accordingly, Plaintiff's right of privacy claim is dismissed.

### III.  Lanham Act Claim

The SAC alleges that Defendants' inclusion of Plaintiff's "image, likeness and voice" in the DVD sets and promotional materials violated section 43(a) of the Lanham Act by "creating the false impression that Plaintiff approved, sponsored or was otherwise associated with this advertising and with the Soul Train DVD Sets."  This claim must be dismissed because the SAC fails to plead facts showing that Defendants *explicitly* misled consumers, as required by Second Circuit law.

Section 43(a) prohibits the use of "any word, term, name, symbol, [] device, . . . false designation of origin, false or misleading description of fact, or false or misleading representation of fact" in a manner that "is likely to cause confusion, or to cause mistake, or to

deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person." 15 U.S.C. § 1125(a)(1).  "A claim for false endorsement under section 43(a)(1)(A) must allege that the defendant, (1) in commerce, (2) made a false or misleading representation of fact (3) in connection with goods or services (4) that is likely to cause consumer confusion as to origin, sponsorship, or approval of the goods or services." *Jackson v. Odenat*, 9 F. Supp. 3d 342, 354-55 (S.D.N.Y. 2014) (internal quotation marks omitted).  The "critical issue under the Lanham Act" is "whether there is any likelihood that an appreciable number of ordinarily prudent purchasers are likely to be misled, or indeed simply confused, as to the source of the goods in question," *Pirone v. MacMillan, Inc.*, 894 F.2d 579, 584 (2d Cir. 1990) (internal quotation marks omitted), or are likely to believe that "the mark's owner sponsored or otherwise approved of the use," *Dall. Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd.*, 604 F.2d 200, 205 (2d Cir. 1979).

Recognizing the tension between the Lanham Act and First Amendment free speech protections, the Second Circuit has articulated a particular standard for artistic works. *Rogers*, 875 F.2d at 998.  The Court has held that "the [Lanham] Act should be construed to apply to artistic works only where the public interest in avoiding consumer confusion outweighs the public interest in free expression," specifically where the alleged misuse of the identifying material "explicitly misleads as to the source or the content of the work." *Id.* at 999.  Although "consumer confusion" is normally a factual question, claims may be dismissed as a matter of law where the plaintiff "cannot possibly show confusion as to source or sponsorship." *Pirone*, 894 F.2d at 584-85 (internal quotation marks omitted).

The DVD sets here are artistic works, and the Complaint does not allege facts that could possibly show that consumers are likely to be confused about the source or ownership of those works because of the depiction of Plaintiff, among many other artists, in and on the DVD sets. Second Circuit law makes clear that the DVD sets here constitute artistic works. "Movies, plays, books, and songs are all indisputably works of artistic expression . . . ." *Rogers*, 875 F.2d at 997. The fact that the DVD sets are "sold in the commercial marketplace" for profit does not alter this conclusion. *See id.* The DVD sets are therefore artistic works subject to the heightened "consumer confusion" standard articulated in *Rogers*.

Thus, to state a claim under the Lanham Act, Plaintiff must plead that Defendants' inclusion of Plaintiff in the DVD sets and promotional materials was "explicitly misleading as to source or content." *Id.* at 999. The SAC, however, fails to do so. Instead, the SAC contains only conclusory allegations that Defendants' inclusion of Plaintiff in the DVD sets and promotional materials "caused confusion and mistake to consumers, would-be consumers, [and] fans." In *Rogers*, the Second Circuit held that "the slight risk that . . . use of a celebrity's name might implicitly suggest endorsement or sponsorship to some people is outweighed by the danger of restricting artistic expression." *Id.* at 1000. None of the allegations in the Complaint here suffice to plead that Defendants' inclusion of Plaintiff "explicitly misleads as to the source or the content of the work." *See Brown v. Elec. Arts, Inc.*, 724 F.3d 1235, 1239, 1248 (9th Cir. 2013) (noting that, while complaint alleged video game had "no artistic relevance" and defendant "attempted to mislead consumers about [plaintiff's] involvement" in video game, "none of the facts asserted in support of these legal conclusions actually justify the conclusions"). Particularly where Plaintiff is depicted along with many other artists, and where the trademarks

11

"Soul Train" and "Time Life" are prominently displayed on the DVD sets' packaging and contents. Accordingly, Plaintiff's Lanham Act claim is dismissed.

## IV. Deceptive Business Practices and Common Law Trademark Infringement Claims[2]

The SAC also alleges (1) unfair and deceptive business practices under Illinois Consumer Fraud and Deceptive Trade Practices Act and (2) trademark infringement and unfair competition under Illinois common law. These claims are dismissed, as Illinois courts apply the same analysis as Lanham Act claims to claims under the Illinois Consumer Fraud and Deceptive Business Practices Act and for common law trademark infringement. *See Trans Union LLC v. Credit Research, Inc.*, 142 F. Supp. 2d 1029, 1038 (N.D. Ill. 2001) (citing *AHP Subsidiary Holding Co. v. Stuart Hale Co.*, 1 F.3d 611, 619 (7th Cir. 1993)); *Spex, Inc. v. Joy of Spex, Inc.*, 847 F. Supp. 567, 579 (N.D. Ill. 1994) (citing *Gimix, Inc. v. JS & A Group, Inc.*, 699 F.2d 901, 908 (7th Cir. 1983)).

Therefore, Plaintiff's deceptive business practices and common law trademark infringement claims must share the same fate as Plaintiff's Lanham Act claim and are dismissed.

---

[2] Like his right of publicity claims, Plaintiff's deceptive business practices and common law trademark infringement claim is preempted by federal copyright law. *See Defined Space, Inc. v. Lakeshore E., LLC*, 797 F. Supp. 2d 896, 903 (N.D. Ill. 2011) ("[T]his court agrees with the other courts in this district and the Illinois Appellate Court that the rights asserted under [the Illinois Consumer Fraud and Deceptive Business Practices Act] are not qualitatively different from the rights conferred under the Copyright Act.").

**CONCLUSION**

For the foregoing reasons, Defendants' Motion to Dismiss is GRANTED. The Clerk of the Court is directed to close the motion at Docket No. 32 and to close the case.

SO ORDERED.

DATED:  December 12, 2014
        New York, New York

_____
**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**